1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lisa G. Salisbury, Esq. (SBN 172353)
Salisbury Group, Inc., a California corporation
3720 South Susan Street, Suite 110
Santa Ana, California 92704
Telephone: 714.957.2990
Fax: 714.557.2739
Email: Lsalisbury@salisburygroupinc.com

Attorney for Plaintiffs,
Kenneth Munoz, et al

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### Southern Division – Santa Ana

Kenneth Munoz, an Individual, Marina Munoz, an Individual, and Kenneth Munoz and Marina Munoz on behalf of their minor children, KM, XM, YM, and ZM

          Plaintiffs,

    v.

Pauline Wong, an Individual, Pauline Wong dba LW Realty, Stanley Y.Lau and Pauline Wong Lau, Trustees or Any Successors Trustee(s) in Trust, for the Lau Family Revocable Living Trust, UDT 12.18.17, and DOES 1 -10,inclusive

          Defendants.

Case No:

COMPLAINT FOR DAMAGES for:
1. VIOLATIONS OF TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968 (FEDERAL FAIR HOUSING ACT).
2. BREACH OF CONTRACT
3. BREACH OF A FIDUCIARY DUTY
4. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
6. FRAUD - INTENTIONAL MISREPRESENTATION
7. FRAUD - NEGLIGENT MISREPRESENTATION
8. VIOLATIONS OF CAL.CIV.CODE §1941
9. NEGLIGENCE PER SE

DEMAND FOR JURY TRIAL

1
VERIFIED COMPLAINT

Kenneth Munoz, an Individual, Marina Munoz, an Individual, and both on behalf of their minor children, KM, XM, YM, and ZM (collectively, "PLAINTIFFS" or "MUNOZ"), complain of Defendants Pauline Wong, an Individual, Pauline Wong dba LW Realty, Stanley Y. Lau and Pauline Wong Lau, Trustees or Any Successors Trustee(s) in Trust, for the Lau Family Revocable Living Trust, UDT 12.18.17, and Does 1-10 (collectively, "WONG" or "DEFENDANTS") and alleges as follows:

## PARTIES

1. Plaintiff, Kenneth Munoz is an adult California resident in the City of Orange, County of Orange, in the State of California.

2. Plaintiff, Marina Munoz is an adult California resident in City of Orange, County of Orange, in the State of California.

3. Plaintiff Marina Munoz qualifies as a disabled person under the Federal Fair Housing Act as she was enduring a high risk pregnancy as she was pregnant with triplets and ordered to be on bedrest at the time of WONG's unlawful behavior as described further below.  As such, Plaintiff Marina Munoz qualifies as a person protected under the Federal Fair Housing Act per 42 U.S.C. §3602(k).

4. Plaintiffs Kenneth and Marina Munoz have four minor children. Their son, referred to as KM, is four years old. Their triplet daughters, referred to as XM, YM, and ZM (collectively the "Triplets"), are Twenty-One Months old. All reside in the City of Orange, County of Orange, in the State of California.

5. Plaintiffs Kenneth and Marina Munoz bring this lawsuit also on behalf of their minor children, KM, XM, YM, and ZM in their capacity as their general guardians pursuant to Federal Rule Civil Procedure 17(c)(1)(a.)

6. PLAINTIFFS bring this action acting as a "private attorneys general" as permitted under the 42 U.S.C. §3613 without the American tax payer(s) bearing the financial burden for such action.

7. PLAINTIFFS are informed and believe that Defendant Pauline Wong, an Individual resides in the County of Orange, California.

8. PLAINTIFFS are informed and believe that Defendant Pauline Wong, an Individual dba LW Realty is a licensed California Real Estate Broker since November 7, 1996 in the County of Orange, California. (CBRE License No. 01108601.)

9. PLAINTIFFS are informed and believe that Defendants Stanley Y. Lau and Pauline Wong Lau, Trustees or Any Successors Trustee(s) in Trust, for the Lau Family Revocable Living Trust, UDT 12.18.17 are the owners for

the subject property commonly known as 8251 Tyler Circle, Huntington Beach, California 92646 ("PROPERTY") during the relevant time period specified below.

10. Unless specifically stated herein, PLAINTIFFS do not know the true names of DEFENDANTS, their business capacities, their ownership connection to the PROPERTY and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such DEFENDANTS.

11. PLAINTIFFS are informed and believe that each of the Do Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. PLAINTIFFS will seek leave to amend when the true names, capacities, connections, and responsibilities of the DEFENDANTS and Does 1 through 10, inclusive, are ascertained.

## JURISIDICTION AND VENUE

12. This court has subject matter jurisdiction over this action pursuant to Title VIII of the Civil Rights Act of 1968 (Federal Fair Housing Act) 42 U.S.C. §3602 et seq.

13. Pursuant to 28 U.S.C. §1367, this court also has supplemental jurisdiction over "all other [non-federal] claims that are so related ... that they form

part of the same case or controversy." Thus, this court has supplemental jurisdiction over PLAINTIFFS' non-federal claims because the PLAINTIFFS' non-federal claims have the same nucleus of operative facts; arise out of the same transaction and/or occurrence; and are part of the same case or controversy as set forth under Article II of the United States Constitution.   PLAINTIFFS' state law claims involve the same DEFENDANTS and the same PROPERTY.

14. In addition, this court also has personal jurisdiction over the DEFENDANTS because the DEFENDANTS conduct and continue to conduct a substantial and significant amount of business in the State of California, County of Orange.  Furthermore, the PROPERTY exists in the State of California, County of Orange.

15. Venue is proper in the Central District of California, Southern Division pursuant to 28 U.S.C. §1391 because the PLAINTIFFS reside within this district and DEFENDANTS currently conduct and continue to conduct a substantial and significant amount of business in this district. DEFENDANTS are subject to personal jurisdiction in this district, and a substantial portion of the conduct complained of herein occurred in this district.

## FACTUAL BACKGROUND

16. On March 26, 2017, Mr. Kenneth Munoz signed a document entitled "Residential Lease or Month to Month Rental Agreement" ("AGREEMENT.")

17. Per the AGREEMENT, the Landlord for the PROPERTY is identified as Pauline Wong, an Individual and includes her signature.

18. Per the AGREEMENT, LW Realty is identified as the Real Estate Broker (Listing Firm.)

19. On March 27, 2017, MUNOZ paid via Cashier's Check to WONG $2,995.00 for the First Month's Rent and $3,000.00 for the Security Deposit for a total of $5,995.00. Pursuant to the AGREEMENT, the first month's rent covered rent the time period of April 15, 2017 through May 14, 2017.

20. A few days later, WONG scheduled and performed an informal walk through of the PROPERTY with Mr. Kenneth Munoz, and his wife, Mrs. Marina Munoz, a petite woman, who was very visibly pregnant with triplets. WONG explained that the PROPERTY was still occupied by tenants and instructed the PLAINTIFFS, *"Don't touch anything."* As such, MUNOZ did not open any of the cupboards and thus MUNOZ was unable to see the obvious, growing, severe black mold that existed at the time.

21. During this informal walkthrough, Mr. and Mrs. Munoz specifically disclosed to WONG that Mrs. Munoz had been diagnosed with a high risk pregnancy and was ordered to be on bed rest. As such, WONG promised that the PROPERTY would be ready, clean, and safe for all occupants and WONG congratulated Mrs. Munoz on her pregnancy. Mr. Munoz specifically requested the PROPERTY be professionally cleaned in order to ensure the health and safety of Mrs. Munoz, the unborn triplets, and their two old son. WONG agreed. WONG represented to MUNOZ that the PROPERTY would be perfect upon arrival and safe for living. WONG knew at this point that Mrs. Munoz was visibly pregnant with triplets.

22. On April 15, 2017, the AGREEMENT began. The AGREEMENT was set to terminate contractually on March 31, 2018.

23. On April 15, 2017, Mr. Munoz witnessed WONG personally "cleaning" the PROPERTY instead of having it professionally cleaned. Mr. Munoz arrived to the PROPERTY to receive the keys to the PROPERTY, and he saw that every window was opened. WONG appeared to be rushing the cleaning process and Mr. Munoz witnessed a variety of over the counter cleaning products spewed about in the PROPERTY. The photographic record, described further below, will show the PROPERTY was filthy and never cleaned.

VERIFIED COMPLAINT

24. On April 15, 2017, WONG gave the keys to the PROPERTY to MUNOZ. At this time, Mrs. Marina Munoz was approximately twenty-three (23) weeks pregnant with triplets. MUNOZ began to move their personal belongings into the PROPERTY.

25. On April 17, 2017, MUNOZ was horrified to discover black mold infestation, major water damage, and rat feces upon opening the cupboards in the PROPERTY. MUNOZ, promptly, sent WONG pictures of the black mold, water damage, and rat feces via text message asking for immediate accommodations and resolution. WONG responded that she was on vacation at the time and would send over her handyman. WONG offered neither solutions for reasonable accommodations nor efficient and timely repairs. At no time, did WONG provide any reasonable accommodation to MUNOZ during a stressful, anxious, and emotional period despite being repeatedly asked to provide them as MUNOZ could not reside at the PROPERTY.

26. MUNOZ was never able to fully move into the PROPERTY. Mr. Kenneth Munoz was the only member to actually sleep overnight in the PROPERTY. He had to sleep on the floor of the PROPERTY, risking contamination, but he had to sleep in the PROPERTY in order to allow

repairman to access to the PROPERTY.   Mr. Munoz recently had back surgery yet had to sleep on the floor of the contaminated PROPERTY.

27. Since approximately, April 17, 2017, MUNOZ was unable to fully move in to the PROPERTY due the presence of black mold, rat feces, and other dangerous microbials in the PROPERTY.   At this point, seventy-five percent (75%) of the MUNOZ's personal belongings and furniture were moved into the PROPERTY.     Since MUNOZ had terminated their previous tenancy, the Munoz Family was in flux and in a state of disarray not knowing their housing situation and as they were fearful that their belongings and valuables were being contaminated and that they themselves had been exposed to dangerous microbials.

28. On or about April 17, 2017, WONG indignantly told MUNOZ to simply stay at their previous Irvine Company apartment even though MUNOZ had negotiated with the Irvine Company to terminate their previous lease early and only had a couple days left in that residence.   In addition, MUNOZ's Irvine Company apartment was empty with no beds, furniture, or toys for KM.  At this time, Mrs. Munoz was ordered to be on bed rest as a result of her high risk pregnancy.   Thus, WONG had instructed a pregnant woman carrying triplets, ordered to be on bed rest, to sleep on the floor as opposed to WONG meeting her legal obligations to provide reasonable

accommodations and comply with the AGREEMENT to provide temporary housing accommodations.

29. On or about April 18, 2017, WONG asked Mr. Munoz to assist her and to meet her handyman at the PROPERTY.   Mr. Munoz agreed in the spirit of cooperation with the goal of swift resolution. When Mr. Munoz asked the handyman for a business card, the handyman did not have a business card and appeared to be unlicensed.   While at the PROPERTY, this handyman, told Mr. Munoz in regards to the visible dangers, *"This is bad.  You shouldn't be here.  I can paint over it if you want."*   In addition, the handyman stated, *"[WONG] does 'shoddy' work like this all the time...she does things half way."*

30. On or about April 19, 2017, Mr. Munoz, Mrs. Munoz, their attorney, and WONG, met at the PROPERTY.   WONG stated to Mrs. Munoz, *"There are different standards of clean."*   Thereafter, counsel for MUNOZ contacted WONG to resolve this issue amicably and efficiently.   WONG said she needed to investigate the issue.

31. The PROPERTY contained numerous patchwork jobs done to the interior and exterior walls.   Later discovery revealed the PROPERTY had unpermitted and dangerous additions to the PROPERTY.   Professionals have confirmed that the patchwork at the PROPERTY, at the time of

move-in, indicated WONG had or should have had knowledge of the dangerous conditions that existed in the PROPERTY.   Professionals documented a complete lack of moisture barrier at the site of the water damage.

32. On April 22, 2017, the City of Huntington Beach's Code Enforcement Officer, Mr. Jimmy Hoang was contacted via electronic mail regarding the dangers in the PROPERTY.

33. Subsequently, on April 24, 2017, a Notice of Violation was sent to WONG at the PROPERTY by the City of Huntington Beach giving WONG fifteen days from receipt to correct and resolve the problems at the PROPERTY. Mr. Hoang confirmed that this situation was dangerous and normally the City does not get involved in the enforcement of mold issues in rental units.  However, an exception was made in this case due to Mrs. Munoz's high risk pregnancy and KM's infancy.  A true and correct copy of the Front Cover for City of Huntington Beach Code Enforcement case relating to the PROPERTY is attached and fully incorporated herein as Exhibit "A."   Mr. Hoang informed MUNOZ's counsel that this was the only information available about the open and active code enforcement case at the time.

34. WONG only began to attempt to repair the dangerous condition in the PROPERTY when faced with the City of Huntington Beach Code Enforcement's Notice of Violation.

35. On April 20, 2017, WONG ignored MUNOZ's counsel's request to provide interim housing to MUNOZ while the hazards were being investigated and the problems resolved. At this time, MUNOZ was extremely stressed attempting to find interim housing on a limited budget because WONG refused to return MUNOZ's First Month Rent and Security Deposit even through it was not safe to stay at the PROPERTY, especially at a time when Mrs. Munoz was pregnant.

36. Per AGREEMENT section 32, entitled, "Damage to Premises", *"if by no fault of Tenant, [p]remises are totally or partially damaged or destroyed by fire, earthquake, accident,* ***or other casualty*** (emphasis added) *that render [p]remises totally or partially uninhabitable…if the agreement is not terminated, Landlord shall promptly repair the damage, and the rent shall be reduced based on the extent to which the damage interferes with the tenant's reasonable use of the [p]remises."* WONG never complied with this provision.

37. Furthermore, WONG made no reasonable accommodations for MUNOZ during this period of limbo caused by the pre-existing dangerous

microbials in the PROPERTY. Mrs. Munoz was ordered to be on bed rest and moving from hotel to hotel was not conducive to Mrs. Munoz's disability (a high risk pregnancy). WONG failed to offer a similarly situated rental unit or an extended stay hotel as a reasonable accommodation for MUNOZ despite multiple requests.

38. On April 23, 2017, WONG gave a Notice of Entry for a mold inspection to take place in the PROPERTY.

39. On April 24, 2017, WONG cancelled this mold inspection.

40. Shortly thereafter, WONG finally attempted to do repairs and confirmed such repairs would take at least approximately eleven (11) days and that no one could occupy the house at said time. WONG however, refused to provide interim housing accommodations for MUNOZ. WONG also refused to ensure MUNOZ's personal belongings were tested if decontamination was necessary preventing their safe removal from the PROPERTY during the course of the eleven (11) days of repairs.

41. On April 24, 2017, MUNOZ's counsel sent a follow up confirmation email confirming WONG's verbal agreement to drop off a cashier's check representing reimbursement of MUNOZ's first month rent and security deposit. This check was never delivered as promised. These funds could have been used to find interim or substitute housing, but instead the funds

were not returned as promised, forcing MUNOZ to endure greater financial upheaval.

42. MUNOZ was forced to have their possessions trapped in the PROPERTY (specifically, linens, bedding, toys, etc.) while they searched for new accommodations. This wreaked havoc on a pregnant woman and a very young child. It was unknown how damaged and/or how contaminated MUNOZ's personal property was, as their personal belongings were being continually exposed to the black mold and other dangers in the PROPERTY on a daily basis. While MUNOZ did not reside in the PROPERTY because of the dangers that existed, their personal belongings were trapped in the PROPERTY because it was unknown if it was safe to remove their belongings and furniture in order to prevent cross contamination.

43. Despite the inordinate stress, strain, and anxiety under the circumstances worrying about the lives of their family including the unborn, now born triplet girls, finally on May 1, 2017, MUNOZ felt some relief knowing they were able to locate a new rental home.

44. On May 2, 2017, Counsel for WONG confirmed via electronic mail that MUNOZ was unable to reside at the PROPERTY.

45. On May 4, 2017, MUNOZ hired, Mr. Chris H. Boesen, a licensed professional to perform a full mold investigation.  MUNOZ had to use their own funds to hire quality, licensed professionals to promptly confirm the dangers in the PROPERTY and ensure their personal belongings could and would be safely removed from the PROPERTY.   MUNOZ had to expend their own financial resources to ensure their safety, something WONG should have done earlier.

46. While inspecting the PROPERTY, Mr. Boesen's foot went through the floor due to the preexisting water damage to the PROPERTY because the PROPERTY was in such disrepair.

47. From May 5, 2017 to May 8, 2017, Mrs. Munoz, pregnant with triplets, was ordered to be hospitalized.

48. On May 5, 2017, the doctor told Mrs. Munoz that if she were to deliver the triplets, the survival rate would only be 50%; this was extremely stressful for MUNOZ to hear and deal with causing extreme stress and anxiety.

49. On May 9, 2017, Mr. Kenneth Munoz had a doctor's appointment for stress and anxiety.

50. On May 9, 2017, Counsel for WONG sent a premature, harassing, and falsified three day "Notice to Perform Covenant (cure) or Quit" to try and

scare MUNOZ and misrepresent the record.   Even if the PROPERTY was livable, rent would not even have become due until May 14, 2017 pursuant to the AGREEMENT.

51. Counsel for MUNOZ had communicated with counsel for WONG in order to have mold remediation done to ensure MUNOZ's personal property was properly tested, disinfected if necessary, and shipped to MUNOZ's new residence.   COUNSEL for WONG did not respond or comply with this request.

52. On May 9, 2017, Mr. Boesen's report and photographs were sent to Counsel for WONG as Mr. Boesen had confirmed black mold and rat feces.  A true and correct copy of the report by Mr. Boesen is attached and fully incorporated herein as Exhibit "B." A true and correct copy of the photographs taken by Mr. Boesen indicating the hazards on the PROPERTY is attached and fully incorporated herein as Exhibit "C."

53. Finally on May 15, 2017, after MUNOZ was forced to use their own funds to hire licensed professionals to clean and disinfect their personal property, their belongings were safely removed from the PROPERTY.

54. On June 6, 2017, MUNOZ returned the keys to WONG via FedEx.

55. On June 21, 2017 Counsel for WONG returned the Security Deposit ($3,000.00) via First Class Certified Mail to Counsel for MUNOZ.  The

first month's rent has not yet been returned despite MUNOZ never being able to enjoy the PROPERTY.     No security deposit itemization was provided.

56. On June 18, 2017, Mrs. Munoz gave birth to triplets, four weeks earlier than expected.  As a result, the triplets had to spend forty-five (45) days in incubation.

**FIRST CAUSE OF ACTION FOR VIOLATIONS OF TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968 (THE FEDERAL FAIR HOUSING ACT)**

57. PLAINTIFFS re-allege and incorporate by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

58. The Federal Fair Housing Act, 42 U.S.C. §3601-19, states it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of-- that person; or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that person.

59. The Fair Housing Act states discrimination includes a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such

modifications may be necessary to afford such person full enjoyment of the premises, except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted, and a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

60. The Federal Fair Housing Act, in 42 U.S.C. §3602(k), specifically identifies pregnancy, under the auspices of familial status, as a member of the class defined in 42 U.S.C. §3604(b) as protected from discrimination in housing sales and rentals.

61. Mrs. Marina Munoz was experiencing a high risk pregnancy while she was pregnant with triplets and ordered to be on bed rest. As a result, she is protected under the Federal Fair Housing Act.

62. WONG knew that Mrs. Marina Munoz was pregnant with triplets.

63. WONG failed to and refused to provide Mrs. Marina Munoz with reasonable accommodations in the form of alternate housing such as an extended stay hotel or another temporary rental unit.

64. MUNOZ had requested the reasonable accommodations to the AGREEMENT be made after finding the PROPERTY was unsuitable for human living due to the dangerous microbials existing in the PROPERTY. MUNOZ needed a place to stay since MUNOZ's previous residence was empty and Mrs. Munoz was ordered to be on bedrest. WONG as the landlord for the PROPERTY failed to provide any assistance to MUNOZ in providing any sort of temporary accommodations or a per diem as MUNOZ could not stay at the PROPERTY and suddenly had nowhere to reside.

65. As a result of WONG's unlawful conduct, MUNOZ suffered damages to be proved at trial, including damages for emotional distress.

66. PLAINTIFFS request reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

67. PLAINTIFFS re-allege and incorporate by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

68. To prevail on a cause of action for breach of contract, the PLAINTIFFS must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the

resulting damage to the plaintiff." *Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.

69. The parties had a valid contract, which was the Residential Lease or Month to Month Rental Agreement ("AGREEMENT.")

70. PLAINTIFFS paid the First Month's Rent and Security Deposit.

71. The PLAINTIFFS' performance was excused because PLAINTIFFS were unable to live in the PROPERTY. The PLAINTIFFS were constructively evicted because the PROPERTY was not suitable for human living due to dangerous microbials existing in the PROPERTY such as black mold.

72. WONG as the Landlord failed to ensure the PROPERTY was clean, sanitary, and suitable for human living.

73. Per AGREEMENT section 32, entitled, "Damage to Premises", *"if by no fault of Tenant, [p]remises are totally or partially damaged or destroyed by fire, earthquake, accident, **or other casualty** (emphasis added) that render [p]remises totally or partially uninhabitable...if the agreement is not terminated, Landlord shall promptly repair the damage, and the rent shall be reduced based on the extent to which the damage interferes with the tenant's reasonable use of the [p]remises."*

74. The PROPERTY was completely uninhabitable due to a black mold infestation constituting a casualty.

75. Since the PROPERTY was completely uninhabitable due to the dangerous microbials including black mold, WONG breached her duty under the AGREEMENT as the warranty of habitability is implied in every lease.

76. MUNOZ was unable to reside in the PROPERTY and never got to have any reasonable use of the PROPERTY.   Mr. Munoz was the only person to stay overnight.

77. WONG, as the Landlord, never promptly repaired the damage.

78. WONG severely delayed proper remediation.  WONG also never ensured that the repairs were done by licensed professionals.

79. WONG also failed to have MUNOZ's personal belongings tested to determine if disinfection and/or decontamination was required, essentially MUNOZ's personal belongings hostage, delaying the remediation process.

80. WONG failed to return MUNOZ's First Month Rent even though MUNOZ was not able to utilize and live in the PROPERTY.

81. As a result of WONG's unlawful conduct, MUNOZ suffered damages to be proved at trial including damages for emotional distress.

82. PLAINTIFFS request reasonable attorney's fees and costs.

**THIRD CAUSE OF ACTION FOR BREACH OF A FIDUCIARY DUTY**

83. PLAINTIFF re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

84. In order to prevail on a cause of action for Breach of a Fiduciary duty, the PLAINTIFFS must show that the DEFENDANTS were PLAINTIFFS' fiduciary; that DEFENDANTS acted on the PLAINTIFFS' behalf for the purposes of the real estate transaction; that DEFENDANTS failed to act as a reasonably careful real estate agent would have acted under the same or similar circumstances; that PLAINTIFF was harmed; and that DEFENDANTS' conduct was a substantial factor in causing the PLAINTIFFS' harm.

85. WONG acted a real estate broker and Landlord by and through her entity, for the benefit of MUNOZ in order to find MUNOZ a suitable rental unit to reside in.

86. A reasonable, prudent real estate agent and/or broker and landlord would ensure the PROPERTY is habitable before the occupants move in especially as WONG asserted total control in management and ownership of the PROPERTY.  However, WONG failed to reasonably clean the PROPERTY, even after assuring MUNOZ the PROPERTY would be professionally cleaned and safe for human living.

87. Because WONG failed to ensure the PROPERTY was safe and clean, MUNOZ moved into the PROPERTY while there was the existence of dangerous microbials, including black mold.

88. Had WONG thoroughly met her duty of care with regards to PROPERTY in the ordinary course, WONG would have disclosed the existence of the dangerous microbials in the PROPERTY and not allowed MUNOZ to move in.

89. Because of WONG's conduct, MUNOZ was exposed to dangerous microbials effecting MUNOZ, to which Mrs. Munoz, KM, and the triplets had compromised immune systems.

90. Because of WONG's conduct, MUNOZ experienced ongoing, severe, emotional distress.

91. As a result of WONG's unlawful conduct, MUNOZ suffered damages to be proved at trial including damages for emotional distress.

## FOURTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

92. PLAINTIFF re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

93. To prove a claim for negligent infliction of emotional distress, a tenant must show that: (1) the landlord negligently cared for the property; (2) the

tenant suffered serious emotional distress; and (3) the negligence caused the emotional distress.

94. Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it.

95. WONG failed to professionally clean and/or maintain the PROPERTY.

96. WONG failed to take reasonable precautions to prevent and cure the mold infestation and other dangerous microbials in the PROPERTY before MUNOZ took possession.

97. WONG (1) failed to act quickly and efficiently to safeguard MUNOZ's personal belongings and furniture, which were contaminated by the microbials, (2) failed to make timely repairs, (3) failed to find MUNOZ an alternate temporary residence; and (4) failed to return the First Month's Rent and Security Deposit making it extremely difficult for MUNOZ to quickly find a new safe home.

98. As a result of WONG's negligence described herein, she forced Mrs. Munoz, pregnant with triplets to sleep on the floor.

99. As a result of WONG's actions, MUNOZ experienced constant severe emotional distress and anxiety and loss of sleep thinking about the safety and welfare of their family including KM, and the triplets.

100.    As a result of WONG's actions, KM, two years old at the time, started to experience night terrors as he was began absorbing his parents' anxiety and fear over the situation; he did not have any routine that he was accustomed to; and was deprived of his personal belongings and toys, held hostage by WONG.

101.    As a result of WONG's actions, Mr. Munoz started taking anti-anxiety medication and as a result of the negative side effects brought on by the medical complications as a result of the dangerous microbials and living in constant fear of how the dangerous microbials would affect his wife and children.

102.    As a result of anxiety brought on by WONG's negligence in maintaining and cleaning the PROPERTY, Mrs. Munoz was unexpectedly hospitalized while pregnant with triplets and then a short time thereafter she experienced an early delivery and the Triplets were required to be in incubation for forty-five (45) days as a result of the increased stress and anxiety.

103.    As a result of WONG's unlawful conduct, MUNOZ suffered damages to be proved at trial including damages for emotional distress.

**FIFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

104.    PLAINTIFF re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

105.    A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' _Hughes v. Pair_ (2009) 46 Cal.4th 1035, 1050–1051.

106.    A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.' " Id.

107.    It is outrageous and inconceivable that WONG had no compassion and provided no assistant to MUNOZ in their time of need.

108.    MUNOZ expected to move in to a PROPERTY that was professionally cleaned and free of dangerous microbials.  However, the PROPERTY contained dangerous microbials, such as black mold and rat feces.

109.    WONG did nothing to ensure MUNOZ quickly had temporary alternative housing and failed to make repairs in a timely and efficient fashion, she even kept the First Month's Rent and Security Deposit of $3,000.00 with no good faith basis for the retention causing extreme distress over having no place to reside.  WONG did nothing but force a woman pregnant with triplets and ordered to be on bed rest to sleep on the floor.  WONG had a lackluster demeanor and ignored any meaningful settlement attempt.   As a broker, WONG knew or should have known the proper protocol and could have and should have acted in good faith to help MUNOZ, a family under inordinate stress and anxiety.

110.    WONG caused MUNOZ to be in a constant state of worry and peril as the lives of seven individuals were at risk, five (5) of which had compromised immune systems.

111.    As a result of WONG's intentional and outrageous conduct, MUNOZ was severely harmed and experienced severe emotional distress.

112.    As a result of WONG's unlawful conduct, MUNOZ suffered damages to be proved at trial including damages for emotional distress.

## SIXTH CAUSE OF ACTION FOR FRAUD – INTENTIONAL MISREPRESENTATION

113.    PLAINTIFF re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

114.    A complaint for fraud must allege the following elements: (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." *Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1816.

115.    By listing the PROPERTY on the Multiple Listing Service and by allowing money to be exchanged for renting the PROPERTY, WONG represented the PROPERTY was safe and suitable for human living.

116.    WONG represented to MUNOZ that the PROPERTY was clean and sanitary and suitable for human living, all while taking MUNOZ's First Month's Rent and Security Deposit of $3,000.00.  WONG knew or should have known this representation was false, as WONG was still "cleaning" the PROPERTY when Mr. Munoz picked up the keys to the PROPERTY. Investigation revealed swipe marks near the location of the black mold

demonstrating that WONG knew or should have known of the black mold and did not properly disinfect it and eradicate the source of the water intrusion before MUNOZ moved in.

117.    WONG made the representation to MUNOZ, a young, minority family, in an effort to deceive the family and rent the PROPERTY quickly just to get money.  WONG consistently delayed taking any action to repair the damage, remediate the PROPERTY, and protect MUNOZ's personal property trapped in the contaminated PROPERTY. WONG still has not returned MUNOZ's First Month Rent despite MUNOZ being unable to live in the PROPERTY.

118.    MUNOZ relied on the PROPERTY being safe, clean, and ready to live in upon taking possession and MUNOZ quickly discovered the PROPERTY contained dangerous microbials including black mold.

119.    WONG knew or should have known the PROPERTY was not safe as the PROPERTY was previously occupied at that time by an adult female, Bic Herring and her teenage daughter. Ms. Herring's boyfriend often stayed at the PROPERTY until the time when he was hospitalized due to reportedly suffering from microbial inhalation and asbestos exposure.

120.     Previous Multiple Listing Services for PROPERTY indicate that the PROPERTY had a history of unpermitted construction work including in the shower in the Master Bedroom.

121.     As a result of WONG's unlawful conduct, MUNOZ suffered damages to be proved at trial including damages for emotional distress.

**SEVENTH CAUSE OF ACTION FOR FRAUD - NEGLIGENT MISREPRESENTATION**

122.     PLAINTIFF re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

123.     The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 196.

124.     By listing the PROPERTY on the Multiple Listing Service and by allowing money to be exchanged for renting the PROPERTY, WONG represented the PROPERTY was safe and suitable for human living.

125.     WONG misrepresented the fact that the PROPERTY was clean, sanitary, and suitable for human living.

126.    WONG knew or should have known the PROPERTY was not clean, not sanitary, and not suitable for human living, but WONG wrongfully believed the PROPERTY to be clean, safe, sanitary, and suitable for human living.

127.    Any reasonable landlord would use reasonable care to ensure the PROPERTY is safe for human living.  Any reasonable person, landlord, or real estate agent or broker knows or should know that it is extremely unsafe to reside in a property with black mold and other dangerous microbials.

128.    MUNOZ relied on WONG's assertion that the PROPERTY would be professionally clean, safe, and suitable for human living upon taking possession.

129.    As a result of WONG's unlawful conduct, MUNOZ suffered damages to be proved at trial including damages for emotional distress.

**EIGHTH CAUSE OF ACTION FOR VIOLATIONS OF CAL.CIV.CODE §1941**

130.    PLAINTIFF re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

131.    The PROPERTY is not in compliance with habitability standards, which is a direct result of WONG' actions.

132.    A dwelling shall be deemed untenantable for purposes of Section 1941 if it substantially lacks any of the following affirmative standard characteristics or is a residential unit described in Section 17920.3 or 17920.10 of the Health and Safety Code including but not limited to....**and all areas under control of the landlord, kept in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents, and vermin** (emphasis added).

133.    When a Landlord has notice of alleged uninhabitable conditions not caused by the tenants themselves, the Landlord's breach of the implied warranty of habitability exists whether or not [the Landlord] has had a "reasonable time to repair. *Knight v. Hallsthammar (*1981) 171 Cal. Rptr. 707, 29 Cal.3d 46, 623 P.2d 268.

134.    The PROPERTY was in such disrepair as it was not kept in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents, and vermin.

135.    The PROPERTY had black mold and rat feces, water damage, and other dangerous microbials.

136.    The PROPERTY was not professionally cleaned before MUNOZ took possession.

137.    WONG was still personally "cleaning" the PROPERTY as Mr. Munoz arrived to pick up the keys.

138.    As a result of WONG's unlawful conduct, MUNOZ suffered damages to be proved at trial including damages for emotional distress.

## TENTH CAUSE OF ACTION FOR NEGLIENCE PER SE

139.    PLAINTIFF re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this claim as though fully set forth herein.

140.    The presumption of negligence arises if (1) the defendant violated a statute; (2) the violation proximately caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute was designed to prevent; and (4) the plaintiff was one of the class of persons the statute was intended to protect.   *Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1526; see also Cal. Evid. Code §669.

141.    As a landlord, WONG has violated the statute, California Civil Code §1941 as described above, because the PROPERTY was not suitable for human living and contained dangerous microbials such as black mold and rat feces.

142.    As a result of WONG's violation, MUNOZ experienced extreme emotional distress, anxiety, and economic harm.

143.   MUNOZ is part of the class of people that the statute discussed herein is designed to protect as MUNOZ were tenants in a rental property.

144.   This statute is designed to protect those tenants and occupants exposed to living conditions which are dangerous and uninhabitable.

145.   As a result, WONG is presumed negligent and has caused MUNOZ damages in an amount to be determined at trial and severe emotional distress.

## PRAYER

146.   For Compensatory damages including but not limited to actual damages, out of pocket expenses, and emotional distress damages.

147.   For statutory damages and punitive damages under all applicable laws including but not limited to the Fair Housing Act.

148.   For attorney's fees and costs pursuant to the AGREEMENT and to all applicable laws including without limitation to Fair Housing Act;

149.   For Pre-Judgment interest to the extent permitted by law;

150.   For costs of suit; and

151.   For such other and further relief as this court deems just and proper.

## DEMAND FOR JURY TRIAL

MUNOZ hereby demands a trial by jury.

Dated: April 10, 2019

Respectfully Submitted,
**Salisbury Group, Inc., a
California corporation**

By: /s/  *Lisa G. Salisbury, Esq.*

Attorneys for Plaintiffs,
Kenneth Munoz, et al

List of Exhibits:

1. Exhibit "A": Front Cover for City of Huntington Beach Code Enforcement case relating to the PROPERTY
2. Exhibit "B": Report from Chris H. Boesen
3. Exhibit "C": Photographs from Chris H. Boesen

VERIFIED COMPLAINT

## **VERIFICATION**

I have read the foregoing Complaint and know its contents. I am one of the Plaintiffs and one of the parties to this action. I am informed and believe and on that ground allege that the matters stated in the foregoing Complaint are true to my own knowledge, except as to the matters which are therein stated upon information or belief, and as to those matters I believe them to be true. I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed at Huntington Beach, California this 10th day of April, 2019

By: _____
Kenneth Munoz, Declarant

By _____
Kenneth Munoz, as General Guardian on behalf of his minor children, KM, XM, YM, and ZM

1

1
2                         **VERIFICATION**
3          I have read the foregoing Complaint and know its contents. I am one of
4    the Plaintiffs and one of the parties to this action. I am informed and believe and
5    on that ground allege that the matters stated in the foregoing Complaint are true
6    to my own knowledge, except as to the matters which are therein stated upon
7    information or belief, and as to those matters I believe them to be true. I declare
8    under penalty of perjury under the laws of the State of California and the United
9    States of America that the foregoing is true and correct.
10
11   Executed at Huntington Beach, California this 10th day of April, 2019
12
13
14   By: _____
15        Marina Munoz, Declarant
16
17   By: _____
18        Marina Munoz, as General
19        Guardian on behalf of her minor
20        children, KM, XM, YM, and
         ZM
21
22
23
24
25
26
27
28

                                    2